**Ben LEVY**

v.

**UNITED STATES of America.**

**Civ. A. 4823.**

United States District Court
W. D. Louisiana, Shreveport Division.

May 9, 1956.

Elias Goldstein, Blanchard, Goldstein, Walker & O'Quin, Shreveport, La., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., Andrew D. Sharpe, and John W. Fisher, Attys., Dept. of Justice, Washington, D. C., T. Fitzhugh Wilson, U. S. Atty., Shreveport, La., for the United States.

DAWKINS, JR., Chief Judge.

This action having been heard at a trial on the merits, before the Court without a jury, the Court having considered the pleadings, the stipulation of

counsel, the evidence, the arguments and briefs of counsel, makes the following

### Findings of Fact

1.

This is a suit to recover from the Government the amount of a penalty assessed against, and paid by, plaintiff, by the District Director of Internal Revenue under purported authority of Section 2707 (a) of the Internal Revenue Code of 1939, 26 U.S.C. § 2707.

2.

Plaintiff is a resident citizen of Shreveport, Louisiana. During the last quarter of calendar 1952, and first quarter of calendar 1953 (and from about 1950 or 1951), he was the President of Ouachita Steam Laundry, Inc., a Louisiana corporation domiciled at Monroe, Louisiana. He owned all but one share of the corporation's stock, the remaining share being owned by his son, Ben Levy, Jr. The stock had been acquired in 1950 or 1951, the exact date not being shown by the record.

3.

During the period in question, plaintiff also was Vice-President and Production Manager of Shreveport Laundries, Inc., a Louisiana corporation domiciled in Shreveport. That corporation owned and operated four sizeable laundry and dry-cleaning plants, plaintiff having served as sole manager of one of the plants. His duties with Shreveport Laundries, Inc., required him to remain in Shreveport most of the time. Consequently, he was able to visit Monroe only infrequently in connection with operation of Ouachita Steam Laundry, Inc.

4.

Ouachita Steam Laundry, Inc., employed approximately 20 persons, one of whom was Carl Houston. Plaintiff designated him as over-all manager of the entire business, his duties requiring that he handle all of its phases, including collection of social security and withholding taxes from the wages of its employees, and payment of these to the Department of Internal Revenue.

5.

Because the corporation was in poor financial condition, being heavily indebted, during 1951 and early 1952 plaintiff had to pay personally some $2,000 in taxes owed by it, in an effort to keep the business going. After this happened, he instructed Houston to open special bank account into which he was to deposit all such taxes collected or withheld, in order to avoid confusion with other corporate funds. He likewise was instructed to remit all such taxes promptly when due. To assist him in accounting for these funds, plaintiff also employed an auditor in Monroe.

6.

Notwithstanding these explicit instructions, respecting the handling of such tax funds, Houston failed to do so. Plaintiff did not discover this until a time, in late 1952 or early 1953, when the corporation had no funds with which to pay the full amounts due to the Department of Internal Revenue. On March 11, 1953, a pre-existing mortgage, affecting practically all of the corporation assets, was foreclosed upon, putting the corporation out of business and leaving it without funds with which to discharge its tax indebtedness.

7.

The taxes which were due and unpaid, and for which the 100% penalty was levied against plaintiff, were as follows:

| | |
|---|---|
| Federal Withholding Tax (for Income Tax Purposes) Qr. ending December 31, 1952 | $224.10 |
| Federal Withholding Tax (for Income Tax Purposes) Qr. ending March 31, 1953 | 236.09 |
| 1/2 FICA (Federal Insurance Contributions Act, Employee Tax 2%) Qr. ending December 31, 1952 | 121.36 |
| 1/2 FICA (Federal Insurance Contributions Act, Employee Tax 2%) Qr. ending March 31, 1953 | 103.55 |
| Total | $685.10 |

**8.**

The District Director of Internal Revenue, having determined administratively that plaintiff, as President and principal stockholder of the corporation, had "willfully" failed "to pay, collect, or truthfully account for" such taxes, in early August 1954 assessed a penalty against plaintiff equal to the amount of unpaid taxes, which was paid by him on August 10, 1954, under protest.

**9.**

■ Plaintiff testified that he did not, know such taxes had not been paid, fully and timely, until shortly before the mortgage foreclosure, at which time the corporation had no funds with which to pay. There is nothing in the record to contradict his testimony, and we have no reason to doubt his word. Consequently, we find it to be a proven fact that plaintiff did not consciously or deliberately fail or refuse to have the taxes paid, although he may have been negligent in failing to maintain closer supervision over the affairs of the corporation.

### Conclusions of Law

**1.**

The Court has jurisdiction. 28 U.S.C. §§ 1340, 1346(a) (1) (i).

**2.**

In pertinent part, Section 2707(a) of the Internal Revenue Code of 1939, 26 U.S.C. § 2707 provides:

"(a) Any person who *willfully* fails to pay, collect, or truthfully account for and pay over the tax imposed by section 2700(a), or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty of the amount of the tax evaded, or not paid, collected, or accounted for and paid over, to be assessed and collected in the same manner as taxes are assessed and collected. No penalty shall be assessed under this subsection for any offense for which a penalty may be assessed under authority of section 3612. [Emphasis supplied.]

\* \* \* \* \*

"(d) The term 'person' as used in this section includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs. 53 Stat. 290."

**3.**

■ With respect to this section, the term "willfully" has been interpreted to mean, correctly we think, "consciously", "intentional", "deliberately", " 'voluntary, as distinguished from accidental' ." Paddock v. Siemoneit, 1949, 147 Tex. 576, 218 S.W.2d 428, 434, 7 A.L.R.2d 1062. See also, as to the liberal interpretation which should be accorded to penal statutes, 50 American Jurisprudence 431, 432, Verbo "Statutes", §§ 407, 408; 82 C.J.S. Verbo "Statutes", § 389 et seq, p. 925. Counsel for both plaintiff and the Government agree that Paddock, supra, correctly interprets the law on this subject.

**4.**

Here, since plaintiff did not know that the taxes in question were past due and unpaid, until shortly before the corporation failed completely, and at a time when it could not pay, he could not have "willfully" failed to collect, pay, or truthfully account for them, within the meaning of the section involved. Mere negligence, in failing to ascertain the facts, is not enough to render him liable for the penalty.

**5.**

Consequently, the penalty was erroneously assessed. Plaintiff is entitled to judgment for a refund in the full amount paid by him under protest, with interest according to law.

Decree in accordance should be presented for signature.