**COMMONWEALTH DEVELOPMENT ASSOCIATION OF PENNSYLVANIA, Plaintiff,**

v.

**UNITED STATES of America and Alfred L. Whinston, District Director of Internal Revenue Service at Philadelphia, Pennsylvania, Defendants.**

Civ. No. 73–200.

United States District Court,
M. D. Pennsylvania.

Sept. 27, 1973.

Richard C. Fox, York, Pa., for plaintiff.

S. John Cottone, U. S. Atty., Scranton, Pa., Louis J. Lombardo, U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM

SHERIDAN, Chief Judge.

Plaintiff, Commonwealth Development Association of Pennsylvania, filed a complaint requesting the court "(a) To issue a preliminary injunction against the defendants from enforcing their Revocation of the Exempt Tax status of the plaintiff and direct that it be permitted to operate as such an Exempt organization until a final judicial decision has been made in the matter. (b) To grant plaintiff a hearing on the merits of the matter in accordance with its principles of law and equity, and after such a hearing to order and issue a permanent injunction against the defendants prohibiting them from revoking the plaintiff's status as an Exempt Tax organization, and any other unlawful actions against it. (c) To find that such aforesaid Revocation and its retroactivity were illegal, void, invalid, improper, arbitrary, capricious and of no lawful effect; . . . ." Defendants [1] moved to dismiss the complaint.

The plaintiff alleges it is a nonprofit corporation formed on December 27, 1966, under the laws of the Commonwealth of Pennsylvania. In December 1967, plaintiff filed an exemption application pursuant to the Internal Revenue Code, Section 501(c)(4) [26 U.S.C. § 501(c)(4)].[2] On December 20, 1967, the District Director of the Internal Revenue Service granted the exemption pursuant to Section 501(c)(4), "On the basis of your stated purposes and the understanding that your operations will continue as evidenced to date or will conform to those proposed in your ruling application. . . ." By letter of November 24, 1972, the IRS notified plaintiff:

" . . .

Information secured by this office discloses that your organization has not been operated on a nonprofit basis exclusively for the promotion of social welfare. Accordingly, it is held that you do not qualify for exemption from Federal Income Tax as a social welfare organization as described in Sec. 501(c)(4) of the Code.

In view of the foregoing, therefore, your exempt status is hereby revoked effective December 20, 1967, under the provisions of Rev.Procedure 72–4.07. You are required to file Federal Income Tax Returns on Form 1120 for the year 1968 and subsequent years."

On the same date a jeopardy assessment was made against plaintiff for the taxable years 1969 and 1970 in the total amount of $2,368,190.74. On January 10, 1973, the IRS sent plaintiff a written statutory notice of deficiency in income tax for 1969 and 1970.

Plaintiff contends, inter alia, that its constitutional rights were violated and the District Director abused his discretion since a hearing was not held and other due process safeguards were not complied with in the revocation of its tax exempt status. Plaintiff also argues that there was an improper delegation of authority since the notification of the tax exemption revocation, the jeopardy assessment and the statutory notice of tax deficiency were not approved and signed by the appropriate IRS officials.

The defendants moved to dismiss on the ground not only has the United States not waived its sovereign immunity, but there is a specific statute prohibiting this suit.

"Except as provided in sections 6212(a) and (c), 6213(a), and

---

1. While the suit names Alfred L. Whinston, District Director, Internal Revenue Service, as a defendant, it is clearly against the United States of America.

2. "(c) List of exempt organizations.—The following organizations are referred to in subsection (a):

. . . . .

(4) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes."

7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." Internal Revenue Code, Section 7421(a) [26 U.S.C. § 7421(a)].

■ Section 7421(a) is very broad in its coverage, and only when the case comes within some acknowledged head of equity jurisprudence, and only if it is apparent that under the most liberal view of the law and the facts the United States cannot establish its claim, may the suit for an injunction be maintained. Otherwise, the court is without jurisdiction. Enochs v. Williams Packing and Navigation Co., 1962, 370 U.S. 1, 82 S. Ct. 1125, 8 L.Ed.2d 292; Miller v. Nut Margarine Co., 1932, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422; Iannelli v. Long, 3 Cir. 1973, 487 F.2d 317; Sipkoff v. Whinston, M.D.Pa.1973, 354 F. Supp. 683.

Plaintiff claims Section 7421(a) is not applicable here since it does not seek to restrain the assessment or collection of any tax but only wants a hearing and review of the retroactive revocation of its tax exempt status. It further alleges since due process requirements were not met and there was an improper delegation of authority, the Government's action was clearly illegal and the exception to Section 7421(a) applies.

■ A suit to prevent the revocation of plaintiff's tax exempt status under Section 501(c)(4) is a suit to restrain the assessment or collection of taxes and Section 7421(a) is applicable.

"We disagree with appellant's contention that Section 7421(a) is inapplicable because the suit did not seek to enjoin an 'assessment or collection' of any tax.

The administrative proceedings were directed to a withdrawal of tax-exemption and deductibility-assurance rulings of the Internal Revenue Service. Those proceedings are directly involved with the assessment and collection of taxes from appellant and those making contributions to it. If those rulings are withdrawn, appellant will be liable for taxes on any net income realized by it and contributors to it will not be permitted to deduct from their gross income the amount of their contributions. Either event will result in an increase in taxes. On the contrary, if the injunction issues, any assessment or collection of such increased taxes will be prohibited. Section 7421(a) is directed against that result." (Footnote omitted.) Crenshaw. County Private School Foundation v. Connally, 5 Cir. 1973, 474 F.2d 1185, 1188.

See also Bob Jones University v. Connally, 4 Cir. 1973, 472 F.2d 903. *Cf.* "Americans United" Inc. v. Walters, D. C. Cir. 1973, 477 F.2d 1169. Plaintiff's principal contention is that due process rights were not accorded in the revocation. However, the Government has the right to demand immediate tax payment and only afterward must due process requirements be met.

■ Revenue Procedure 72–4 outlines the procedure to be followed in the revocation of a tax exempt status. Included therein is Section 11–(.07), which states:

"The provisions of this Section relating to protest and conference rights before a revocation notice is issued are not applicable to matters where delay would be prejudicial to the interests of the Internal Revenue Service (such as in cases involving fraud, jeopardy, the imminence of the expiration of the statute of limitations, or where immediate action is necessary to protect the interests of the government)." Revenue Procedure 72–4, Section 11–(.01).

This section is in conformity with the statutory jeopardy assessment provision, Internal Revenue Code, Section 6861(a)

[26 U.S.C. § 6861(a)].[3] The demand for immediate tax payment with a subsequent determination of tax liability is not a due process violation. In Phillips v. Commissioner of Internal Revenue, 1931, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289, the Court held:

> "Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate. . . ." 283 U.S. at 596–597, 51 S.Ct. at 611.
>
> ". . .
>
> . . . As to the first of these objections, it has already been shown that the right of the United States to exact immediate payment and to relegate the taxpayer to a suit for recovery, is paramount. . . ." 283 U. S. at 599, 51 S.Ct. at 612.

See also Ginsburg v. United States, 1 Cir. 1960, 278 F.2d 470; Cohen v. United States, 9 Cir. 1962, 297 F.2d 760, cert. denied, 1962, 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84; Lloyd v. Patterson, 5 Cir. 1957, 242 F.2d 742; Jolles Foundation v. Moysey, 2 Cir. 1957, 250 F.2d 166.

Fuentes v. Shevin, 1972, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, and the other authority cited by plaintiff are not on point. Those cases did not involve the government's taxing power. The government has the right to demand immediate payment in the interest of the common good. See Fuentes v. Shevin, supra, at pp. 90–92, 92 S.Ct. 1983.

■ The IRS has broad discretion in making a jeopardy assessment. Lloyd v. Patterson, supra; Parenti v. Whinston, E.D.Pa.1972, 347 F.Supp. 471. There is no evidence to support plaintiff's contention the jeopardy assessment was made in bad faith or arbitrarily.

Parenti v. Whinston, supra; see also Iannelli v. Long, supra. In addition, the Secretary of the Treasury or his delegate may in the exercise of his sound discretion revoke an exemption retroactively pursuant to Internal Revenue Code, Section 7805(b) [26 U.S.C. § 7805(b)]. Automobile Club of Michigan v. Commissioner, 1957, 353 U.S. 180, 184, 77 S.Ct. 707, 1 L.Ed.2d 746; Christian Echoes National Ministry v. United States, 10 Cir. 1972, 470 F.2d 849.

Lesavoy Foundation v. Commissioner of Internal Revenue, 3 Cir. 1956, 238 F.2d 589, is inapposite. There the court found facts showing the Commissioner abused his discretion. Here there is no such evidence. The Government noted in its jeopardy assessment that:

> ". . .
>
> Together with related individuals and firms Taxpayer has been part of a scheme to defeat the tax and to place its assets out of the reach of the Government.
>
> Because of the flagrant abuse of Taxpayer's tax-exempt status and a continuing pattern of conspiring to defeat the tax of the related entities, it is recommended that the civil fraud penalty provided by Sec. 6653(b) of the I.R.C. be imposed.
>
> It is recommended that jeopardy assessments be made against Commonwealth Development Association of Penna. for the years 1969 and 1970. . . ."

Plaintiff has not countered this allegation. In *Lesavoy*, the court's determination came on review from the tax court. Plaintiff has the same opportunity for review. Counsel for plaintiff admits proceedings have commenced in the tax court.

■ Plaintiff argues there may be fourth, fifth and sixth amendment con-

---

3. "(a) Authority for making.—If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof. . . ."

stitutional violations if the injunction is not granted since plaintiff would be compelled to divulge matters in its civil case which would be damaging in the event of a subsequent criminal prosecution. Iannelli v. Long, supra, rejects a similar contention since plaintiff's suit may be deferred pending the criminal proceedings.

██ Finally, plaintiff argues these were improper delegations of authority in making the jeopardy assessment, in revoking its tax exemption and in giving the statutory notice of deficiency. The Government produced affidavits stating Alfred L. Whinston, the District Director of Internal Revenue, pursuant to Commissioner's Delegation Order No. 12 (Rev. 5), designated William Jackson, Chief, Collection and Taxpayer Service Division, as Acting District Director during the absence of the District Director and the Assistant District Director from their offices on November 24, 1972. The affidavit of William Jackson states the jeopardy assessment made on November 24, 1972, was approved by Jackson as the Acting Director of Internal Revenue. The affidavit of Robert F. Bayer states that he is the Chief, Audit Division, Internal Revenue Service, Philadelphia, Pennsylvania, and in such capacity he was authorized to issue notices to organizations of the revocation of tax exemptions and to sign the District Director's name to such notices. Pursuant to Commissioner's Delegation Order No. 12 (Rev. 5), Patrick Gentile, Acting Chief of the Audit Division, stated on November 24, 1972, he approved and issued the notice of revocation of plaintiff's tax exempt status. The affidavit of Sidney Perlin states that pursuant to proper delegation authority, Commissioner's Delegation Order No. 77 (Rev. 3) and District Director's Order No. 38, C.R. DIR–PHI–Memo. No. 44–3, Revised, he signed the District Director's name to a statutory notice of deficiency which was sent to the plaintiff on January 10, 1973.

Plaintiff's argument is that these several responsibilities belong to the District Director alone by delegation from the Commissioner of the IRS. Under Section 6861 and Internal Revenue Code, Section 7805(a) [26 U.S.C. § 7805(a)] regarding authorization to " . . . prescribe all needful rules and regulations for the enforcement of this title, . . ." the "Secretary or his delegate" may authorize the various acts at issue here. Plaintiff takes the limited view that the Secretary or his delegate means no one lower in authority than the District Director, and for anyone else to make the determinations here is a violation of the statutes and an abuse of discretion. It is contended, therefore, that any redelegation by the District Director is improper.

It is unwarranted that a limited meaning be attributed to the "Secretary or his delegate." 26 C.F.R. § 301.7701–9 defines the meaning of the phrase.

"§ 301.7701–9 Secretary or his delegate.

(a) The term 'Secretary or his delegate' means the Secretary of the Treasury, or any officer, employee, or agency of the Treasury Department duly authorized by the Secretary (directly, or indirectly by one or more redelegations of authority) to perform the function mentioned or described in the context, and the term 'or his delegate' when used in connection with any other official of the United States shall be similarly construed.

(b) In any case in which a function is vested by the Internal Revenue Code of 1954 or any other statute in the Secretary or his delegate, and Treasury regulations or Treasury decisions approved by the Secretary or his delegate provide that such function may be performed by the Commissioner, assistant commissioner, regional commissioner, assistant regional commissioner, district director, director of a regional service center, or by a designated officer or employee in the office of any such officer, such provision in the regulations or Treasury decision shall constitute a delegation by the Secretary of the authority

to perform such function to the designated officer or employee. If such authority is delegated to any officer or employee performing services under the supervision and control of the Commissioner, such provision in the regulations or Treasury decision shall constitute a delegation by the Secretary to the Commissioner of the authority to perform such function and a redelegation thereof by the Commissioner to the designated officer or employee.

(c) An officer or employee, including the Commissioner, authorized by regulations or Treasury decision to perform a function shall have authority to redelegate the performance of such function to any officer or employee performing services under his supervision and control, unless such power to so redelegate is prohibited or restricted by proper order or directive. The Commissioner may also redelegate authority to perform such function to other officers or employees under his supervision and control and, to the extent he deems proper, may authorize further redelegation of such authority."

■ The Commissioner's and district director's delegation orders are properly grounded on this regulation. The regulation is not unlawful. The phrase "Secretary and his delegate" is ambiguous as to the extent of the delegation, and the regulation defines adequately its meaning and is consistent with the statutes. Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes. Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831; Abbott v. Commissioner of Internal Revenue, 3 Cir. 1958, 258 F.2d 537; Pennsalt v. Dravo Corporation, E.D.Pa.1965, 240 F. Supp. 837.

Regarding the jeopardy assessment, the Acting District Director *personally* approved the assessment. This is proper under Section 6861 where the Secretary or his delegate may make the assessment. The Revenue Procedure outlined in 1 Cum.Bull. 877 states that jeopardy assessments must be personally made by the District Director of Internal Revenue. Commissioner's Delegation Order No. 12 (Rev. 5) permits an Acting District Director to be designated in the absence of the District Director or the Assistant District Director. This considered with the definition of "Secretary or his delegate," the delegation here was proper.

Thornton v. United States of America and Alfred Whinston, E.D.Pa., Jan. 19, 1973, No. 72-1259 Civil, is cited as authority that the jeopardy assessment delegation here was improper. In *Thornton*, however, the government did not produce any evidence that there was a delegation of authority and that authorization of the jeopardy assessment was made by the Acting District Director. This is not the situation here.

The court is without jurisdiction under Section 7421(a).

This memorandum shall constitute the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

The action will be dismissed.